Martin, J.
delivered the opinion of the court. The plaintiffs claim $2978 40 cents, the balance of an account annexed to the petition.
The defendant pleaded the general issue, and that instead of his being indebted to them, as they allege, they owe him $2654 54 cents; for that they wrongfully shipped to Boston fifty-one hhds. of sugar, on which they occasioned him a loss to that amount.
The plaintiffs had a verdict for $1560, and the defendant prayed for a new trial, which was refused—there was judgment according to the verdict, and he appealed.
Michel deposed, that, in 1819, he had the superintendance of the defendant’s plantation, and, in December, sent fifty hhds. of sugar therefrom to the plaintiffs; that there was a *22 necessity of sending off so many hhds. on account of the want of room—moreover, the deponent was anxious of being, by this means, reimbursed of a sum of $1200, which he had, in the defendant’s absence, advanced for the use of the plantation. The plaintiffs being unable to sell the sugar in New-Orleans, it being of an inferior quality, shipped it to Boston, in hopes of obtaining a better price.
East'n District.
June, 1822.
The defendant returned on the last day of the year, and was in the city when the sugar was shipped, had knowlege of the shipment, and frequently expressed his satisfaction thereat, particularly at the time that he and the witness saw the sugar on the levee, about to be taken on board.
The witness received from the plaintiffs the above sum of $1200, and it is in his knowlege that they paid other sums to the defendant, part of the proceeds of the sugar.
The defendant’s first note for $5000, given for the purchase of the plantation, and endorsed by the plaintiffs, was actually protested, when the sugar was sent to them.
The fifty hhds. were not weighed at the plantation, there being no scales there.
The rest of the crop was shipped to Phila *23 delphia, by arrangement between the defendant and Morgan, Dorsey & Co.
The sugar sent to Boston, was shipped on the recommendation of the witness, who thought that port the best market.
The witness heard the defendant say he was to pay a commission to the plaintiffs for endorsing the notes he had given for the plantation. At the time of the defendant going to New-York, a part of the price, which was to be paid down, being unpaid, the defendant gave the witness a draft on New-York for it, viz. $1800, and said the plaintiffs would endorse it, if necessary; the witness finding it so, applied for and obtained their endorsement, and paid $18 therefor, which the defendant allowed him in his settlement.
On his cross-examination, the witness declared the plaintiffs required a letter from him, before they would ship the sugar. He firmly believes the sugar was not all shipped when the defendant returned from New-York, but he cannot positively swear it. He derives his information of the defendant being to pay the plaintiffs for their endorsement, from the following circumstance: On his being about to divide some of the notes given him by the *24 defendant, for the plantation, into smaller notes, the latter asked whether the endorsement could not be dispensed with, as it would save some money. He did not understand that any claim would be made by the defendant for the endorsement of the plaintiffs on the draft of $1800, and never knew it till he saw the account presented by the defendant. He contests this item. The defendant told him his crop amounted to 200 hhds. sugar.
Wyer deposed, that the plaintiffs made an arrangement with his house for the shipment of 176 hhds. sugar to Boston, on the 29th of December, 1819. On the 31st, the first advance of $4000 was made, and on the 6th of January, the balance, $6998, was paid, being six cents per pound on the shipments. It was made to W. B. Swett & Co., by the MaryAnn. The advance was paid in bills on Boston, at sixty days, negociated through the branch bank of the U. States, at a discount of three percent. The house of W. B. Swett & Co. was at the time a respectable one, and did extensive business, and the witness had for several years before considerable dealings with it. The witness at the time thought the whole shipment belonged to the plaintiffs; but *25 was afterwards told by the defendant that some of his sugar had been shipped to a friend of the witness in Boston. He did not express any disapprobation of the shipment.
Hughes, a clerk of the plaintiffs, deposed that he left the defendant’s account at Foucher’s counting house—that the next day the defendant called and expressed some dissatisfaction at the charge of commissions for endorsement, observing that if it was struck out he would settle the amount. He made no objection to the account of sales of the sugar. There were 121 hhds. belonging to Holliday, and 51 to the defendant in the shipment made to Boston.
Clague says that he is established as a merchant in New-Orleans, since 1811, and he considers two and a half per cent a fair commission for endorsing notes; his house never takes less. He would make no difference as to notes secured by mortgage.
The following documents came up with the record :—
A letter of the defendant to the plaintiffs, in which he acknowleged that they had, at his request, negotiated his drafts on N. York, for $17,000, and had paid him the proceeds; *26 also, that they had endorsed his notes for the payment of Mitchell’s plantation for $108,500, and an assurance that, as a mark of his gratitude, the crop would be consigned to to them. Albin Mitchel’s letters to the plaintiffs, advising the shipment of 51 hhds. of sugar, and the accounts of sales and the account current between the parties.
It does not appear to us that the judge a quo erred in refusing a new trial, on the ground that it cannot be known, “on what the jury based their verdict, nor what part of the plaintiffs’ account has been allowed and what part, rejected.” We think with the plaintiffs’ counsel, that it is neither necessary or usual to designate in the verdict, the particular items of an account, which the jury think supported by the evidence; it suffices that they ascertain the sum due.
We think, with the defendant’s counsel, that a charge of interest at the rate of ten percent, can only be allowed while supported by written proof. Civ. Code, 408, art. 32. The alleged usage of the merchants of paying and demanding interest at that rate, cannot be regarded ; for it is contrary to an express law.—Id. This principle was recognised by this court in Duplantier vs. St. Pe, 3 Martin, 127.
*27 The jury might well on the testimony before them, allow the commission claimed for endorsing the defendant’s paper. They had evidence under his hand, that they had endorsed to a very considerable amount—evidence of the usual rate of such a commission—evidence of the defendant intending to pay such a commission, and if the sole testimony of the witness deposing to this purpose is insufficient, it was corroborated by a beginning of proof in writing—his letters stating the amount of his notes endorsed by the plaintiffs.
We are of opinion that notes, avowedly made to a merchant, for the sole purpose of obtaining his endorsment and by this means his responsibility, are as strictly mercantile paper as a bill of exchange, which subjects parties thereto to mercantile law, and that in this instance proof by a single witness was admissible.
We are of opinion, that there is no evidence of a legal engagement to consign the defendant's crop to the plaintiffs; the letter appears to us to convey nothing more than a declaration of the writer’s intention—that there is no consideration to support a contract; the endorsement of the paper was a past *28 transaction, which had the determinate compensation which the plaintiff seeks in the present suit. The consignment is expressly mentioned as a mark of gratitude; and gratitude is essentially voluntary.
Morse for the plaintiffs, Denis for the defendant.
Upon the whole, we are of opinion that the question was fairly before the jury, and the case supported by evidence of which they are the best judges. They have reduced the plaintiffs’ demand to one half; a reduction considerably exceeding the commission charged on the crops. We cannot say that they erred—nor that the case was such a one in which it was the duty of the court to interfere by granting a new trial.
It is therefore ordered, adjudged and decreed that the judgment be affirmed with costs.